The undersigned have reviewed the Award based upon the record of the proceedings before the Deputy Commissioner.
The appealing party has shown good grounds to reconsider the evidence. However, upon reconsideration of the evidence, the undersigned reach the same facts and conclusions as those reached by the Deputy Commissioner with some modification to allow for permanent partial disability. Neither party here requested the Full Commission to receive further evidence or to rehear the parties or their representatives. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate award.
Accordingly, the Full Commission find as fact and conclude as matters of law the following, which were entered into by the parties as
STIPULATIONS
1. The plaintiff's average weekly wage on 15 October 1990 was $346.04 per week.
* * * * * * * * * * *
The Full Commission adopt as their own all findings of fact found by the Deputy Commissioner, with minor technical modifications and the addition of Findings of Fact Numbers 18 and 19, as follows:
Based upon the competent and convincing evidence adduced at the hearing, the undersigned make the following additional
FINDINGS OF FACT
1. At the time of the initial hearing, plaintiff was 38 years old, with a date of birth of 19 May 1956. Plaintiff was the mother of two minor children who lived at home. For her education plaintiff had completed high school in 1974, had completed three and a half years in criminal justice studies at Shaw University, and had training at the North Carolina Justice Academy where she earned a Correctional Officer Certificate. For her work history plaintiff had worked with her father in sanitation in 1977 (three years after high school), as an assembler in an factory in 1978, as a housewife at home from 1978 through 1981, as a police officer in 1981, again as a housewife for six years between 1981 and 1987, and as a security guard for one month in 1987 in an airport. She began working for the defendant on 26 October 1988. Her job with defendant was as a correctional officer in prison.
2. On 15 October 1990 (about four years before the hearing), plaintiff sustained an admittedly compensable injury by accident. The accident occurred when plaintiff was transporting an inmate from prison to a hospital. Plaintiff tripped on construction boards, twisted her right knee, and fell to the ground. Co-workers helped plaintiff up, and she was sent to the emergency room. X-rays were taken at the emergency room, and at the time of the x-rays there was no fracture of plaintiff's leg. Plaintiff was referred to Dr. Wallace Andrews, Jr., an orthopedic surgeon.
3. The first treatment by Dr. Andrews was on 31 October 1990 (about two weeks after the accident). The results of Dr. Andrews' examination were within normal limits, but plaintiff claimed tenderness and discomfort. Dr. Andrews referred plaintiff to physical therapy.
4. Dr. Andrews treated plaintiff conservatively with medication and physical therapy for about five months. During the first physical therapy, the physical therapist found that flexion of plaintiff's legs was not symmetrical; however, on later tests, the physical therapist found that plaintiff had more strength in her knee than she was demonstrating. After five months Dr. Andrews ordered a MRI and a Cybex test. The results of the Cybex test were inconsistent because plaintiff did not put forth good effort.
5. The last examination by Dr. Andrews was on 21 March 1991. At the time of this examination, plaintiff claimed pain in both knees which was so severe that she had to go to the emergency room where she was placed on crutches and given a knee immobilizer. Dr. Andrews discussed plaintiff's lack of effort during the Cybex test, and he felt that she should obtain the services of another physician. At this time plaintiff retained no permanent partial impairment.
6. Plaintiff did not complain to the physical therapist nor to Dr. Andrews of any low back pain, although during physical therapy, her treatment included performing straight leg raising exercises.
7. Plaintiff's attorney referred her to Dr. Tejpal Dhillon, an orthopedic surgeon; and he began to treat plaintiff about three months after her release by Dr. Andrews. The results of Dr. Dhillon's examination were generally within normal limits, but Dr. Dhillon suspected an internal derangement of the right knee or a torn medial meniscus. Dr. Dhillon referred plaintiff to her second course of physical therapy.
8. Defendant ordered an independent medical evaluation by Dr. George Edwards, an orthopedic surgeon. Dr. Edwards concurred in the opinions of Dr. Andrews.
9. On 12 July 1991 (about one month after his treatment began), Dr. Dhillon performed arthroscopic surgery. At the time of the surgery there was no torn meniscus. However, there was chondromalacia, which is softening of the cartilage of the knee. Dr. Dhillon shaved off some of the softened cartilage under the kneecap.
10. Immediately after surgery, plaintiff made a good recovery. In September 1991 (two months after surgery and one year after the accident), Dr. Dhillon released plaintiff to return to work at light duty. Between September 1991 and September 1992, plaintiff was out of work for substantial periods, although it is uncertain from the record what time, if any, plaintiff actually worked. Dr. Dhillon gave plaintiff several excuses to return to work at light duty during this year.
11. In August 1992 (about two years after the accident), Dr. Dhillon again released plaintiff to return to work at light duty, but plaintiff told Dr. Dhillon that there was no light duty available. Defendant contacted Dr. Dhillon to inform him that light duty was available. On 28 September 1992, plaintiff returned to work. The job was light duty, where plaintiff was allowed to attend a watch tower. Plaintiff stayed at this job until 23 June 1993. Plaintiff has not worked nor sought any other gainful employment since 23 June 1993.
12. In October 1992, plaintiff had reached maximum medical improvement. In the two years between her October 1990 accident and the October 1992 end of the healing period, defendant paid plaintiff her full salary, pursuant to the provisions of N.C.G.S. § 143-166.14, rather than workers' compensation. At the time plaintiff reached maximum medical improvement, she was capable of returning to work at her regular job. Plaintiff did not mention any low back pain to her first three doctors nor to her first two physical therapists.
13. After plaintiff was released by Dr. Dhillon (a doctor of her choice), plaintiff went to Dr. Theodore Pitts. Although plaintiff lived in Wilson, she went to Durham for treatment by Dr. Pitts. The first examination by Dr. Pitts was on 29 September 1992, the day after her return to work. Plaintiff did not request authorization for the treatment by Dr. Pitts from either the defendant or the Industrial Commission. At the time plaintiff sought treatment from Dr. Pitts, defendant had not failed or refused to provide plaintiff with adequate and necessary medical care. Dr. Pitts knew that his treatment was not authorized.
14. Dr. Pitts performed two arthroscopic surgeries on plaintiff's right knee. Defendant did not have the opportunity to obtain a second opinion before either surgery. The inability to obtain a second opinion materially prejudiced the defendant. Dr. Dhillon had recommended no additional surgery, and the surgeries performed by Dr. Pitts did not provide any actual relief.
15. The present claim requires a determination of credibility. The reason that the credibility of the plaintiff must be assessed is because Dr. Andrews, Dr. Edwards and Dr. Dhillon have released plaintiff from future medical care, and Dr. Dhillon gave plaintiff few restrictions for returning to work. However, plaintiff claims to be severely impaired. She claims to need a wheelchair on occasions, and she claims to be entitled to temporary total disability compensation continuing indefinitely or permanent and total disability compensation. The undersigned find that plaintiff's testimony was not credible or convincing. This finding is based on plaintiff's demeanor as she testified before the Deputy Commissioner, on the fact that plaintiff exaggerated her symptoms and did not put forth good effort during her treatment by Dr. Andrews, and on the limited objective support for her claim including the results of an x-ray and an MRI and the results of physical examinations. Because of plaintiff's lack of credibility and convincingness, there is insufficient convincing evidence of record from which the undersigned can determine from its greater weight what, if any, restrictions were caused by the injury by accident of 15 October 1990.
16. At the time of his deposition, Dr. Pitts was investigating whether plaintiff's complaints could be caused by a back injury or as a result of a prior episode of syphilis. The undersigned find that any low back condition plaintiff may have experienced after 29 September 1992 was not caused by the injury by accident of 15 October 1990. This finding is based on the fact that plaintiff did not complain of low back pain for two years after her accident and did not report low back pain to her first three doctors nor to her first two physical therapists.
17. The treatment provided by Dr. Pitts following 29 September 1992 was not made necessary as a result of the injury by accident of 15 October 1990 in order to provide relief, to effect a cure, or to reduce any period of time during which plaintiff was unable to be gainfully employed.
18. Plaintiff retains a ten percent (10%) permanent partial disability to the right leg as a result of her compensable knee injury.
19. No temporary total disability benefits were ever paid by the Department of Correction.
* * * * * * * * * * *
Based upon the findings of fact as found by the Deputy Commissioner and adopted by the Full Commission, with modification, the Full Commission find as follows:
CONCLUSIONS OF LAW
1. On 15 October 1990, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer. N.C.G.S. § 97-2 (6).
2. As a result of the injury by accident of 15 October 1990, plaintiff is not entitled to any temporary total disability compensation from 24 June 1993 and continuing to the date of the hearing. N.C.G.S. § 97-29.
3. As a result of the injury by accident of 15 October 1990, plaintiff is entitled to permanent partial disability compensation in the amount of ten percent (10%) to the right leg, subject to the attorneys' fee hereafter provided. N.C.G.S. § 97-31.
4. Plaintiff's counsel is entitled to a reasonable attorneys' fee of twenty-five percent (25%) of plaintiff's permanent partial disability benefits.
5. Plaintiff is entitled to the payment of all medical expenses incurred, or to be incurred, as a result of the injury by accident of 15 October 1990. Plaintiff is not entitled to the payment of any medical treatment provided to her by Dr. Pitts. N.C.G.S. § 97-25.
6. As no temporary total disability benefits were ever paid by defendant, defendant is not entitled to a credit or offset against the permanent partial disability benefits.
* * * * * * * * * * *
The foregoing stipulations, findings of fact, and conclusions of law engender the following:
AWARD
1. Plaintiff's claim for permanent and total disability compensation pursuant to the North Carolina Workers' Compensation Act must be, and the same is hereby, DENIED.
2. Defendant shall pay plaintiff for a ten percent permanent partial disability to the right leg, said amount having accrued and to be paid in a lump sum, subject to the attorneys' hereafter provided.
3. Defendant shall subtract 25 percent from amounts due plaintiff as a reasonable attorneys' fee to be paid directly to plaintiff's counsel.
4. Each side shall pay its own costs, except that defendant shall pay an expert witness fee in the amount of $600.00 to Dr. Pitts and $350.00 to Dr. Dhillon.
This case is ORDERED REMOVED from the Full Commission docket.
This the __________ day of _____________________, 1996.
 S/ ________________ J. HOWARD BUNN, JR. CHAIRMAN
CONCURRING:
S/ ________________ J. RANDOLPH WARD COMMISSIONER
S/ ________________ LAURA K. MAVRETIC COMMISSIONER
JHB/nwm 12/08/95